**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

THOMAS FEDELE et al.,

                Plaintiffs,                1:14-cv-559
                                                        (GLS/CFH)

        v.

MARIANNE HARRIS et al.,

                Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Office of Howard R. Birnbach | HOWARD R. BIRNBACH, ESQ. |
| 111 Great Neck Road - Suite 413 | |
| Great Neck, NY 11021 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. ERIC T. SCHNEIDERMAN | HELENA LYNCH |
| New York State Attorney General | STEPHEN M. KERWIN |
| The Capitol | Assistant Attorneys General |
| Albany, NY 12224 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Thomas Fedele, Matthew Anderson, Gregory Aurigemma, Arturo F. Ramirez-Calle, and Alec Zef commenced this action against defendants Marianne Harris, Kiaran Johnson-Lew, Mary Starr, Richard

Ernst, Jamie Woodward, Honora "Nonie" Manion, Nancy Williams, Edward Chaszczewski, Richard Arnold, Argiroula "Argi" O'Leary, Victor Vasta, Jr., Todd Wynne, and David Savoie, asserting claims pursuant to 42 U.S.C. § 1983 based upon violations of their First and Fourteenth Amendment rights, as well as claims pursuant to federal and New York state tax confidentiality laws. (*See generally* Compl., Dkt. No. 1.) Pending is defendants' motion to dismiss the complaint in its entirety for failure to state a claim. (Dkt. Nos. 19, 33.)[1] For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## II. **Background**[2]

Plaintiffs here, except for Anderson, were, at all times relevant to this

---

[1] This case was originally commenced in United States District Court for the Eastern District of New York. (*See generally* Compl., Dkt. No. 1.) Defendants moved to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction, as well as to dismiss or transfer the case due to improper venue. (Dkt. No. 19.) In a Memorandum of Decision and Order dated May 9, 2014, District Judge Arthur D. Spatt of the Eastern District of New York denied defendants' motion insofar as it sought to dismiss the complaint for lack of subject matter jurisdiction, but granted defendants' motion to the extent it sought transfer of the case to the Northern District of New York. (Dkt. No. 27 at 16.) Judge Spatt "decline[d] to address that part of . . . [d]efendants' motion seeking to dismiss the complaint for failure to state a claim upon which relief can be granted," and thus denied that portion of defendants' motion, with leave to renew in the transferee court. (*Id.*) Pursuant to that decision, the case was transferred to this court. (Dkt. No. 28.) Defendants subsequently renewed their motion to dismiss in this court, to the extent it sought dismissal for failure to state a claim. (Dkt. No. 33.) That motion is currently pending before this court, with the parties relying on their earlier submissions. (Dkt. No. 34.)

[2] Unless otherwise noted, the facts are drawn from plaintiffs' complaint and presented in the light most favorable to them.

2

action, employees of the New York State Department of Taxation and Finance (DTF), specifically the Office of Tax Enforcement and the Criminal Investigations Division (CID). (Compl. ¶ 6.) On July 8, 2010, the New York Post published an article in which it stated that CID's funding for cigarette sting operations had been "substantially cut as a result of political pressure." (*Id.* ¶ 29.) That same day, Thomas Stanton, who had been the director of CID, and Paul Rossi, the deputy director of CID, were terminated. (*Id.* ¶¶ 30-31.) Plaintiffs allege that they were "closely associated with Stanton in their work at the Office of Tax Enforcement," but that, because of New York's civil service laws, they could only be terminated "for cause." (*Id.* ¶ 33.)

A few days after the newspaper article was published, Ernst sent an email to plaintiffs, among others, threatening them with discipline because of the leak of information to the media. (*Id.* ¶ 34.) The next month, Aurigemma, Ramirez-Calle, and Zef were contacted by Peter Persampieri, the director of investigations, and directed to schedule interviews with the Department of Internal Affairs. (*Id.* ¶ 35.) On August 16, they were "interrogated" by internal affairs investigators about the newspaper article and the leaked information. (*Id.* ¶ 36.)

3

Shortly afterwards, on August 25, all plaintiffs received a Notice of Audit, dated August 22, 2011, "demanding production of records to substantiate the information on their 2010 tax returns." (*Id.* ¶ 37.) Such an audit "within only a few months of the filing deadline is extraordinary and unusual." (*Id.* ¶ 41.) Typically, such audits are performed by low-level DTF employees, but in this case, plaintiffs' audits were "directed and closely supervised" by high-ranking officials in DTF, including defendants. (*Id.* ¶¶ 44-45.)

Following the audits, in April 2012, defendants served a "notice of deficiency" on each plaintiff, alleging deficiencies of various amounts "for taxes allegedly due and payable for personal income tax." (*Id.* ¶¶ 47, 51, 55, 59, 63, 67, 71, 75, 79.) Plaintiffs assert that these notices of deficiency were "a pretext designed to provide a lawful basis for the retaliatory termination of plaintiff[s]." (*Id.* ¶¶ 48, 52, 56, 60, 64, 68, 72, 76, 80.) Each plaintiff has challenged these tax assessments with the New York State Department of Taxation, Division of Tax Appeals (DTA), which remained pending as of the commencement of this action. (*Id.* ¶¶ 50, 54, 58, 62, 66, 70, 74, 78, 82.) On August 17, 2012, Savoie ordered Aurigemma, Fedele, Ramirez-Calle, and Zef "to submit to an [i]nterrogation regarding . . . their

4

2010 tax return, the same issues that had been protested to, and were then pending before . . . DTA." (*Id.* ¶ 86.)

In November 2011, defendants "disclos[ed] [p]laintiffs['] confidential tax return information to the Human Resources of [DTF]." (*Id.* ¶ 84.) Similarly, in June 2012, defendants made the same disclosure "to the Labor Relations of [DTF]." (*Id.* ¶ 85.) Ultimately, on August 20, 2013, Aurigemma, Fedele, Ramirez-Calle, and Zef were suspended after the New York State Supreme Court, Albany County, ordered defendants to respond to plaintiffs' request under the Freedom of Information Law for documents regarding the "Labor Relations interrogations." (*Id.* ¶ 89.)

Plaintiffs commenced this action in November 2013, alleging that the "interrogations" and "suspensions were in retaliation for [p]laintiffs exercising their civil rights, including . . . their right to redress grievances under the First Amendment." (*Id.* ¶¶ 88, 90.) Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983 for violations of their First Amendment rights to freedom of speech and freedom to redress grievances, and their Fourteenth Amendment equal protection rights. (*Id.* ¶¶ 98-100, 101-04.) They also assert violations of United States and New York state tax secrecy laws when their tax information was disclosed without their

5

consent. (*Id.* ¶¶ 91-93, 94-97.) They seek "compensatory and punitive damages." (*Id.* ¶¶ 93, 97, 100, 104.)

## III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

Although not a model of clarity, the theory pleaded in plaintiffs' complaint on their § 1983 causes of action appears to be that they were interrogated and targeted for audits in retaliation for the alleged leak of information leading to the publishing of the newspaper article, and then were subsequently suspended in retaliation for challenging, with DTA, the resulting tax assessments. (*See generally* Compl.) They also allege that their "confidential tax return information" was disclosed to "Human Resources" and "Labor Relations." (*Id.* ¶¶ 84-85.)

In their motion, defendants have offered several arguments in favor of dismissing the complaint. With respect to plaintiffs' § 1983 causes of action, defendants first argue that the claims against them in their official

capacities are barred by Eleventh Amendment immunity. (Dkt. No. 19, Attach. 1 at 12-13.) They further argue that plaintiffs have failed to adequately allege personal involvement of each defendant, requiring dismissal of the § 1983 claims for damages against defendants in their individual capacities. (*Id.* at 13-14.) Turning to the merits of plaintiffs' claims, defendants assert that plaintiffs have failed to state a claim that any constitutional rights were infringed. (*Id.* at 17-19.) Lastly, with respect to plaintiffs' claims based on the disclosure of their tax information, defendants argue that plaintiffs have failed to state a claim, and that the statutes at issue were not intended to cover or apply to the circumstances of this case, and thus these claims should be dismissed. (*Id.* at 14-16.)

In response to defendants' motion, plaintiffs argue that they have properly pleaded causes of action under both § 1983, (Dkt. No. 25 at 17-25), and the tax disclosure laws at issue here, (*id.* at 14-17). The court will address each of plaintiffs' claims, and defendants' corresponding arguments for dismissal, below.

Before turning to the arguments raised in defendants' motion, the court first addresses what it may properly consider in resolving this motion. In response to the motion, which initially sought dismissal for improper

venue, lack of subject matter jurisdiction, and failure to state a claim, (Dkt. No. 19, Attach. 1 at 1), plaintiffs submitted an affidavit from Fedele and several exhibits. (Dkt. No. 25, Attachs. 1-11.) Plaintiffs also refer to these exhibits numerous times in their arguments opposing dismissal for failure to state a claim. (Dkt. No. 25 at 14-25.) Defendants argue that, while the affidavit and exhibits could properly be considered with respect to the venue and subject matter jurisdiction issues decided by the Eastern District of New York, they should not be considered by this court in ruling on the motion to dismiss for failure to state a claim. (Dkt. No. 26 at 1.) The court agrees.

"A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citation omitted). "In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Only in certain circumstances, not applicable here,

8

may the court "permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." *Id.*; *see Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (explaining that, on Rule 12(b) motion, the court may consider matters of which judicial notice may be taken); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999) (noting that, on a motion to dismiss, the court may consider documents that are attached to the complaint or incorporated in it by reference); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) (noting that the court may also consider documents upon which the complaint relies and which are integral to the complaint).

While such exhibits may be considered by the court on a motion to dismiss for lack of subject matter jurisdiction, *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court . . . may refer to evidence outside the pleadings."), the subject matter jurisdiction component of this motion has already been adjudicated by the Eastern District of New York, leaving only the portions of defendants' motion brought pursuant to Rule 12(b)(6). (Dkt. No. 27.) As such, given the

9

current posture of the pending motion, brought pursuant to Rule 12(b)(6), reference to matters outside of the pleadings is excluded from the court's consideration on the issue of whether plaintiffs have adequately stated a claim. *See* Fed. R. Civ. P. 12(d).

**A.     Section 1983 Claims**

*1.     Claims Against Defendants in Official Capacities*[3]

As mentioned above, defendants argue that the claims against them in their official capacities must be dismissed due to Eleventh Amendment immunity. (Dkt. No. 19, Attach. 1 at 12-13.) In response, plaintiffs argue that their official capacity claims are not barred "because [p]laintiffs may seek equitable relief against [defendants] in their official capacity." (Dkt. No. 25 at 18.) For the following reasons, plaintiffs' § 1983 claims against defendants in their official capacities are dismissed.

Suits for damages arising under 42 U.S.C. § 1983 are barred by the Eleventh Amendment unless the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). This bar applies to suits against state officials for money damages when sued in

---

[3] At the outset, the court notes that the capacity in which plaintiffs have chosen to sue defendants is not specified in the complaint. (*See generally* Compl.) However, as discussed herein, this is of no moment, as plaintiffs' claims pursuant to § 1983 are dismissed against defendants in both their official and individual capacities.

their official capacities. *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *see also Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." (citations omitted)).

In response to defendants' motion, plaintiffs assert, without any citation to the complaint, and seemingly for the first time in this case, that "[i]n the [c]omplaint, [they] seek equitable relief in addition to monetary damages against [d]efendants." (Dkt. No. 25 at 18.) Although plaintiffs are correct that § 1983 claims seeking declaratory or injunctive relief, in contrast to those seeking money damages, are not barred by Eleventh Amendment immunity, *see Will*, 491 U.S. at 71 n.10, the court is unable to discern such a request anywhere in plaintiffs' complaint, as in each of their causes of action, plaintiffs claim that they "have been damaged in an amount of compensatory and punitive damages," (Compl. ¶¶ 93, 97, 100, 104), and they expressly seek "judgment . . . for an amount to be determined by a jury," (*id.* at 12). In the entirety of plaintiffs' complaint, there is no mention of declaratory or injunctive relief; plaintiffs seek money

damages only, which are unavailable against defendants in their official capacities on the § 1983 causes of action. Accordingly, to the extent defendants here are sued in their official capacities, these claims are barred by the Eleventh Amendment.

2. *Claims Against Defendants in Individual Capacities*

With respect to the § 1983 claims against defendants in their individual capacities, defendants argue that they are entitled to dismissal because plaintiffs have failed to allege personal involvement by defendants in the alleged constitutional violations. (Dkt. No. 19, Attach. 1 at 13-14.) Again, the court agrees.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, No. 97 CIV. 2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v.*

12

*Iqbal*, 556 U.S. 662, 676 (2009).  The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if it can be shown that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Here, eleven of the thirteen defendants sued by plaintiffs are not even mentioned by name in the body of the complaint, leaving the court with no idea of what involvement, if any, they each had in the alleged deprivations of constitutional rights.  Although plaintiffs assert in their motion response papers that "[o]ther acts of personal involvement will be borne out through . . . discovery," (Dkt. No. 25 at 19), they are still obligated to plead and/or allege the "personal involvement of defendants in alleged

constitutional deprivations [a]s a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (internal quotation marks and citations omitted); *see Cipriani v. Buffardi*, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."); *Purdie v. Mahoney*, No. 9:05-CV-0705, 2005 WL 3050969, at *1 (N.D.N.Y. Nov. 14, 2005) (stating that, to satisfy the personal involvement requirement, a plaintiff must "set forth allegations of personal involvement by each named defendant in his complaint, and may not meet this obligation with conclusory allegations," and that "he must name [defendants] in the caption of his complaint *and* set forth specific allegations of wrongdoing as to each individual in the body of his complaint").

  Plaintiffs further argue that those defendants who are in supervisory positions could be charged with personal involvement in the alleged wrongdoing because they "learned of the constitutional violations through their email correspondence." (Dkt. No. 25 at 19 (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir. 1989).)  However, there are no

14

facts pleaded in the complaint from which the court could reasonably conclude that particular defendants in supervisory roles had such knowledge; all that plaintiffs have alleged here, without further factual allegations, is that "defendants title their conspiracy against [plaintiffs] a 'special project' in their communications." (Compl. ¶ 46.) This allegation falls short of attributing any defendants with knowledge of any particular unconstitutional action.

With respect to the two defendants who are named in the body of the complaint, the complaint merely states that Ernst "transmitted an e-mail threatening the plaintiffs, and others, with discipline arising from the leak of information to the *New York Post*," (*id.* ¶ 34), and that Savoie "ordered [p]laintiffs . . . to submit to an [i]nterrogation regarding expenses set forth in their 2010 tax return, the same issues that had been protested to, and were then pending before . . . DTA," (*id.* ¶ 86). However, the court is unable to see how these particular acts attributed to Ernst and Savoie represent violations of any constitutionally protected rights. The "gravamen" of plaintiffs' complaint consists of claims for First Amendment retaliation and a violation of Fourteenth Amendment equal protection rights. (Compl. ¶¶ 22, 102.) Although Ernst threatened discipline as a result of the newspaper

15

leak, there is no allegation that Ernst subsequently disciplined anyone, nor have plaintiffs even alleged that any of them in fact engaged in any protected speech with respect to that incident. Similarly, while Savoie directed plaintiffs to submit to an interrogation regarding their tax returns, which plaintiffs had previously protested to DTA, plaintiffs have not alleged that Savoie was even aware of these protests, nor that he was treating plaintiffs differently than any other employees. Plaintiffs argue that "defendants are linked to the wrongdoing by their own emails and affidavits of former personnel," (Dkt. No. 25 at 19), but, as already discussed, such affidavits and exhibits are not appropriately considered on a 12(b)(6) motion, and plaintiffs simply have not pleaded such links in their complaint.

## B. Tax Secrecy Claims

The federal tax return confidentiality statute provides that "[r]eturns and return information shall be confidential," and, with limited exceptions,[4] "no officer or employee of any State . . . shall disclose any return or return information obtained by him in any manner in connection with his service

---

[4] Defendants do not appear to argue that any exceptions apply here. The only exception mentioned in their motion papers is one permitting "disclosure of tax returns and return information for use by the Department of Treasury in personnel matters," which would not seem to be relevant here, as plaintiffs have not alleged any involvement by the Department of Treasury. (Dkt. No. 19, Attach. 1 at 15 (citing 26 U.S.C. § 6103(l)(4).)

16

as such an officer or an employee." 26 U.S.C. § 6103(a)(2). The enforcement mechanism for this statute is found in § 7431, which states:

> If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 or in violation of section 6104(c), such taxpayer may bring a civil action for damages against such person in a district court of the United States.

*Id.* § 7431(a)(2). Thus, the elements of a cause of action for willful or negligent inspection or disclosure of a taxpayer's tax return or return information under § 7431 include: (1) unauthorized disclosure; (2) made either negligently or with knowledge; and (3) in violation of § 6103. *See Weiner v. Internal Revenue Serv.-Collections Div.*, 789 F. Supp. 655, 656 (S.D.N.Y. 1992), *aff'd sub nom. Weiner v. I.R.S.*, 986 F.2d 12 (2d Cir. 1993). Similarly, the New York analog, found in N.Y. Tax Law § 697(e)(1), states that "it shall be unlawful for . . . any . . . employee of the department . . . to divulge or make known in any manner . . . any particulars set forth or disclosed in any report or return required under this article."

In support of dismissal, defendants argue that plaintiffs have failed to state a claim for violation of the federal statute because "there was no need for any defendant to access plaintiffs' federal tax returns," as "itemized

17

deductions were (and are) reported on the New York State income tax return form." (Dkt. No. 19, Attach. 1 at 15.)  With respect to the state claim, they argue that "it is far from clear that the alleged internal use of plaintiffs' tax returns . . . within DTF for personnel matters constitutes 'divulg[ing] or mak[ing] known' any particulars set forth in any state tax return."  (*Id.* (quoting N.Y. Tax. Law § 697(e)(1).)  However, taking plaintiffs' allegations as a whole, the court finds that they have adequately alleged that their confidential tax return information was disclosed to the human resources and labor relations divisions within DTF, not as a means to collect unpaid taxes, but instead as part of a pretextual scheme, "for employee administrative purposes," to justify initiating meritless audits and suspending plaintiffs out of retaliation.  (Compl. ¶¶ 22-27.)  Although it will ultimately be plaintiffs' burden to substantiate their allegations with record evidence support, and demonstrate that defendants unlawfully disclosed plaintiffs' returns and/or return information, at this stage, all allegations in the complaint are assumed to be true and all reasonable inferences are drawn in favor of the nonmoving party.  *See Oteze Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 1995).  Therefore, at this juncture, plaintiffs have adequately pleaded that their confidential tax returns and/or return

18

information were disclosed, and defendants' motion is denied insofar as it seeks dismissal of these claims.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 33) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    **GRANTED** with respect to plaintiffs' causes of action under 42 U.S.C. § 1983 and those causes of action (Compl. ¶¶ 98-100, 101-104) are **DISMISSED**; and

    **DENIED** with respect to plaintiffs' tax disclosure causes of action (Compl. ¶¶ 91-93, 94-97); and it is further

**ORDERED** that the parties contact Magistrate Judge Christian F. Hummel to schedule further proceedings in this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 20, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court