UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS FEDELE et al.,

                Plaintiffs,

                v.

MARIANNE HARRIS et al.,

                Defendants.
_____

1:14-cv-559
(GLS/CFH)

**APPEARANCES:**          **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Office of Howard R. Birnbach     HOWARD R. BIRNBACH, ESQ.
111 Great Neck Road - Suite 413
Great Neck, NY 11021

**FOR THE DEFENDANTS:**
HON. BARBARA D. UNDERWOOD   HELENA LYNCH
New York State Attorney General   KELLY L. MUNKWITZ
The Capitol                        STEPHEN M. KERWIN
Albany, NY 12224               Assistant Attorneys General

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Thomas Fedele, Matthew Anderson, Gregory Aurigemma, Arturo F. Ramirez-Calle, and Alec Zef bring this action against defendants

Marianne Harris, Kiaran Johnson-Lew, Mary Starr, Richard Ernst, Jamie Woodward, Honora Manion, Nancy Williams, Edward Chaszczewski, Richard Arnold, Argiroula O'Leary, Victor Vasta, Jr., Todd Wynne, and David Savoie pursuant to 26 U.S.C. § 7431, alleging violations of the federal tax confidentiality statute.[1] (Compl., Dkt. No. 1.) Pending are defendants' motion for summary judgment, (Dkt. No. 128), and plaintiffs' motion for sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A), (Dkt. No. 145). For the following reasons, defendants' motion is granted and plaintiffs' motion is denied.

## II. Background

### A. Facts[2]

In late 2010, an investigation conducted by the New York State Department of Tax and Finance's (hereinafter "the Department") Deputy Inspector General revealed that certain Department employees were claiming excessive job-related expense deductions on their New York State income tax returns. (Defs.' Statement of Material Facts (SMF) ¶ 21, Dkt. No. 128, Attach. 2.) Vasta, an investigative auditor for the Deputy

---

[1] *See* 26 U.S.C. § 6103(a)(2).

[2] Unless otherwise noted, the facts are undisputed.

Inspector General, notified Arnold, an Audit Division tax technician, of the suspicious deductions that possibly violated the law and the employee code of conduct. (*Id.* ¶¶ 16, 18, 23, 61-62.) Chaszczewski, Arnold's superior in the Audit Division, thought these large deductions for job expenses were suspect because state employees were usually reimbursed for most job-related expenses. (*Id.* ¶¶ 25-26.) As such, Arnold notified Woodward, then Acting Commissioner of the Department, who directed the Audit Division to conduct an audit evaluating whether Department employees were complying with income reporting obligations. (*Id.* ¶¶ 27-28.)

Accordingly, the Audit Division conducted a Department-wide audit of employees who deducted more than $5,000 in non-reimbursed job expenses with no apparent explanation. (*Id.* ¶¶ 35, 38.) During the screening process, if an employee filed a joint tax return with a spouse, Arnold looked at the spouse's occupation to see if it provided an apparent explanation for the claimed deduction. (*Id.* ¶ 39.) If the spouse's occupation did so, that employee was not selected for audit. (*Id.*) Ultimately, fifty-six employees were audited based on this criteria. (*Id.* ¶ 40.)

Plaintiffs are five current or former employees of the Department's Criminal Investigations Division who were audited. (*Id.* ¶¶ 1, 4-7, 44.) Upon receiving audit inquiries, plaintiffs refused to provide documentation to support their claimed job-related expenses. (*Id.* ¶ 45.) Accordingly, Audit Division employees accessed federal tax information through the Federal Transcript Delivery System (TDS) to verify undocumented deductions.[3] (*Id.* ¶¶ 65-68, 82-83, 85.)

During the course of the audit, Arnold kept supervisors apprised of the audit's progress by preparing and circulating a spreadsheet containing information from all fifty-six employee's state income tax returns. (*Id.* ¶¶ 49-50.) Plaintiffs' TDS information was accessed *after* Arnold created the spreadsheet, and it was never viewed by Arnold. (*Id.* ¶¶ 86-87.) Although periodic updates to the spreadsheet resulted in various versions, none of the versions contained federal tax information. (*Id.* ¶ 51.[4])

---

[3] Plaintiffs' federal tax information was accessed by two auditors who are not named as defendants in this action. (*Id.* ¶¶ 82-85.)

[4] Plaintiffs attempt to controvert this properly-supported assertion by arguing that defendants must have used federal tax information to confirm the state tax filings. (Dkt. No. 145, Attach. 1 ¶ 51.) This is simply a rehash of the same speculative argument already considered and repudiated by the court. (Dkt. No. 150, Attach. 12 at 33-34.) Although, at this stage, all reasonable inferences must be drawn in favor of plaintiffs, they do not point to any evidence of record to controvert defendants' assertion that federal tax information was not contained within the shared spreadsheet. Instead, they rely on an

4

Arnold sent the spreadsheet to Woodward and other Audit Division staff, including Manion. (*Id.* ¶ 52.) Arnold also sent the spreadsheet to Johnson-Lew, the Director of Human Resources, so that she could update or correct job-title information. (*Id.* ¶¶ 9, 53.) Given the potential disciplinary issues involved with overstating deductions, Chaszczewski and Arnold also shared information regarding the audit program, including the spreadsheet, with Wynne and Savoie, the Director and Assistant

---

affidavit from Fedele that stands for the proposition that "one can not [sic] determine which spouse took which job related deduction" without looking at a federal tax return. Although plaintiffs fail to provide a proper citation to the Fedele affidavit, the court was able to ascertain its whereabouts, but only because it was in page two of a forty-nine page document, which was otherwise submitted without a description, contained multiple exhibits, and was unsearchable. (Dkt. No. 145 ¶ 3.) Additionally, plaintiffs point to the depositions of Chaszczewski and Arnold to further support their contention that "[f]ederal tax records were necessary in joint tax returns to determine which spouse took which deduction." (Dkt. No. 145, Attach. 1 at 11.) However, for this assertion, they improperly cite to portions of depositions that have not been placed in the record before the court. *See* N.D.N.Y. L.R. 7.1(a)(3). Nonetheless, even assuming that federal tax records had to be accessed to confirm deductions where plaintiffs filed joint returns—and assuming that some plaintiffs indeed filed joint returns, which plaintiffs do not even assert within their statement of additional material facts or in response to defendants' statement of material facts, (Dkt. No. 145, Attachs. 1, 2)—plaintiffs do not specifically controvert defendants' assertion that no federal tax information was shared via the spreadsheets. (Dkt. No. 150 at 14.) Defendants have detailed the information contained within the spreadsheet, which plaintiffs do not dispute. (Defs.' SMF ¶¶ 74-77.) The spreadsheet did not include federal tax information or a breakdown according to spouse. (*Id.*) Although plaintiffs provide a version of the spreadsheet to the court to show that "state tax information had been 'confirmed' by a review of federal tax records," (Dkt. No. 145, Attach. 2 ¶ 19), it is entirely illegible, (Dkt. No. 155 at 2). Plaintiffs also filed copies of state tax returns that purportedly contain "red lettering stating they are federal tax information." (*Id.* at 3-9.) However, no red lettering is identifiable, (Dkt. No. 155 at 3-9), and the court is skeptical that such a demarcation would have the magical affect of transforming a state tax return into federal tax information, (Dkt. No. 150 at 18). Given that plaintiffs' counsel has already been warned about the consequences of filing illegible papers, (Dkt. No. 144), the court does not consider these filings. Ultimately, plaintiffs do not identify any federal tax information contained within the shared spreadsheets or present any evidence of record that could support a reasonable inference that federal tax information was contained within such spreadsheets.

Director of Labor Relations, respectively.  (*Id.* ¶¶ 19-20, 69-73.[5])[6]

## B. Procedural History

Plaintiffs originally commenced this case in the United States District Court for the Eastern District of New York, seeking compensatory and punitive damages.  (*See generally* Compl.)  Thereafter, the matter was transferred to this District.  (Dkt. No. 27 at 16; Dkt. No. 28).  The action initially included additional claims brought pursuant to 42 U.S.C. § 1983 and New York State Tax Law § 697(e).  (Compl. at 4, 11-12.)  On November 20, 2014, the court dismissed the claims brought pursuant to § 1983 based on the Eleventh Amendment and plaintiffs' failure to plead defendants' personal involvement in the alleged constitutional violations, (Dkt. No. 45 at 10-16, 19), and later dismissed the state tax claims with plaintiffs' consent, (Dkt. No. 76).  A long and contentious discovery

---

[5] Again, plaintiffs fail to specifically controvert these factual assertions.  (Dkt. No. 145, Attach. 1 ¶¶ 69-73.)  In sum, they merely argue that it was not necessary to share information with the Labor Relations Bureau because "no discipline was ever imposed."  (*Id.* ¶ 70.)  Plaintiffs' logic is flawed.  The fact that no discipline was ever imposed on plaintiffs does not negate defendants' rationale for initially preparing for potential disciplinary measures.  Moreover, considering that no federal tax information was shared, as previously discussed, it is immaterial whether disclosing such information was necessary.  Likewise, plaintiffs' contention that *multiple* spreadsheets were shared with the Labor Relations Bureau, (*id.* ¶ 73), is immaterial because plaintiff does not identify any federal tax information in *any* spreadsheet.

[6] Defendants' statement of material facts does not highlight any personal involvement on the part of defendants Harris, Starr, Ernst, Williams, or O'Leary; and, in response, plaintiffs fail to point to any evidence from which it can be reasonably inferred that they impermissibly disclosed federal tax information.  (*See generally* Defs.' SMF; Dkt. No. 145, Attachs. 1, 2.)

6

process followed, (*see generally* Dkt. Nos. 77-127), which spawned defendants' pending motion for summary judgment, (Dkt. No. 128), and plaintiffs' pending cross-motion for sanctions, (Dkt. No. 145).

### III.  Standards of Review

**A.  Rule 37 Sanctions**

Where a party has failed to obey an order to provide discovery, the court has discretion to issue a variety of orders, including striking the pleadings and entering a default judgment against the disobedient party. *See* Fed. R. Civ. P. 37(b)(2)(A).  The use of these harsh sanctions is limited to cases involving "willfulness, bad faith, or any fault" of the disobedient party.  *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958).

**B.  Rule 56 Summary Judgment**

The standard of review pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

**A.     Plaintiffs' Motion for Sanctions**

Plaintiffs argue that defendants' answer[7] should be stricken, or alternatively that defendants' motion for summary judgment should be denied, for disobeying the court's discovery order.  (Dkt. No. 145, Attach. 3 at 5, 8.)  In particular, plaintiffs contend that a severe sanction is warranted under Fed. R. Civ. P. 37(b)(2)(A) because defendants inexplicably failed to produce certain documents "that could guarantee [plaintiffs] their day before a jury," (*id.* at 7), and which were previously described to the court as "essential and critical to the prosecution of [plaintiffs'] case," (Dkt. No. 150, Attach. 12 at 10).  Even if it is true that the lack of such documents sounds the death knell for plaintiffs' case, a review of relevant portions of the record as well as defendants' response to plaintiffs' discovery requests, (Dkt. No. 150 at 5-12), reveals that plaintiffs' motion for sanctions is baseless.

On October 24, 2016, Magistrate Judge Christian F. Hummel ordered defendants to provide responses to plaintiffs' requests numbered 1, 3, 5, 7, 8, 9, and 10 in their second document request.  (Dkt. No. 120,

---

[7] Despite being granted three bites at the apple, (Dkt. No. 144), plaintiffs' memorandum of law erroneously labels the motion as one to dismiss the complaint.  (Dkt. No. 145, Attach. 3.)  Although this particular error is seemingly harmless, the court notes it nonetheless because it is indicative of plaintiffs' counsel's sloppy practice throughout this litigation.

8

Attach. 4; Dkt. No. 127.)  The transcript of the oral arguments and bench rulings preceding Judge Hummel's Memorandum-Decision & Order demonstrate that defendants were not simply ordered to *produce* the relevant documents—as plaintiffs would have the court believe—but rather to produce such documents *or* formally state that such documents were not in their possession or had already been produced.  (Dkt. No. 150, Attach. 12 at 23-46.)  Defendants' subsequent response complied with Judge Hummel's directive: it formally stated that certain documents were previously produced or not in defendants' possession and produced documents that were discovered upon further review.  (*See generally* Dkt. No. 150, Attach. 5 at 3-6.)

Plaintiffs fail to explain how any sanction would be just or equitable in light of defendants' compliance with Judge Hummel's order.  Accordingly, plaintiffs' motion, (Dkt. No. 145), is denied.

**B.    Defendants' Motion for Summary Judgment**

*1.    Federal Tax Information*

The federal tax return confidentiality statute provides that "[r]eturns and return information shall be confidential," and, with limited exceptions, "no officer or employee of any State . . . shall disclose any return or return

information obtained by him in any manner in connection with his service as such an officer or an employee." 26 U.S.C. § 6103(a)(2). The enforcement mechanism for this statute is found in § 7431, which states:

> If any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 . . ., such taxpayer may bring a civil action for damages against such person in a district court of the United States.

26 U.S.C. § 7431(a)(2). Thus, the elements of a cause of action for willful or negligent inspection or disclosure of a taxpayer's tax return or return information under § 7431 are: (1) unauthorized disclosure; (2) made either knowingly or negligently; and (3) in violation of § 6103. *See Weiner v. IRS-Collections Div.*, 789 F. Supp. 655, 656 (S.D.N.Y. 1992), *aff'd sub nom. Weiner v. I.R.S.*, 986 F.2d 12 (2d Cir. 1993).

Here, defendants argue that they are entitled to summary judgment because plaintiffs have failed to identify any evidence indicating that they disclosed any return or return information. (Dkt. No. 128, Attach. 1 at 11-17.) In response, plaintiffs primarily offer unsupported and disjointed assertions that defendants' motion should be denied because it relies on "pure speculation" and there was no need to disclose any federal tax

10

information.  (Dkt. No. 145, Attach. 3 at 10-12[8].)  In fact, out of the twenty-one separate paragraphs that plaintiffs devote to countering this particular argument, only three of those paragraphs contain any citation to the record whatsoever.  (*Id.*)  These lonely citations purport to support the following assertions: (1) Arnold accessed plaintiffs' federal tax records; (2) "certain information concerning the defendants could only have been secured from federal tax records"; and (3) defendants' claim that the federal tax information was not "printed" is pure speculation.  (*Id.* at 10.)  Plaintiffs contend that these assertions are supported by Arnold's declaration "dated January 8, 2013" and "pages 118-122" of his deposition.  (*Id.*)  However, plaintiffs do not bother attaching these documents as exhibits to their motion or pointing out where in the record such evidence is located.  The court has no obligation to scour the voluminous record for evidence to support plaintiffs' assertion.  *See Prive v. Johnson*, No. 5:04–CV–1024, 2010 WL 3338810, at *2 & n.2 (N.D.N.Y. Aug. 23, 2010).  Nonetheless, extending the courtesy that is usually reserved for *pro se* litigants, the court has examined the entire docket and

---

[8] Citations to plaintiffs' memorandum of law correspond to the CM/ECF-generated page numbers because plaintiffs did not include page numbers in contravention of the Local Rules of Practice. *See* N.D.N.Y. L.R. 10.1(a)(7).

finds no declaration submitted by Arnold dated January 8, 2013. As for the citation to Arnold's deposition, the court has no way of knowing whether "pages 118-122" actually support plaintiffs' assertion because they also fail to provide the deposition transcript, and defendants' excerpt of the same does not include those particular pages.[9] (*See generally* Dkt. No. 128, Attach. 8.) Although Arnold's mere access, confirming, or "printing" of plaintiffs' federal tax information would not violate § 6103, with the right cast of complimentary facts, it could give rise to an inference that Arnold thereafter impermissibly disclosed such information. However, plaintiffs fail to provide any support for such an inference.

Plaintiffs' claim that defendants violated § 6103: (1) "[o]n or about November 30, 2011, . . . by disclosing [p]laintiffs['] confidential tax return information to the Human Resources . . . Department," (Compl. ¶ 84), and (2) "[o]n or about June 5, 2012, . . . by disclosing [p]laintiffs['] confidential tax return information to . . . Labor Relations," (*id.* ¶ 85). Although plaintiffs testified vaguely regarding disclosures of federal tax information that allegedly occurred, (Dkt. No. 128, Attach. 1 at 12, 13-14), they have

---

[9] This is not the first time that plaintiffs' counsel has submitted papers that are illegible and disorganized, and the court has warned him that his slipshod behavior "will not be tolerated and that his failure to comply with the Local Rules of Practice may result in the imposition of sanctions[.]" (Dkt. No. 144.)

12

no personal knowledge of any such disclosures. Instead, plaintiffs simply speculate about disclosures of federal tax information occurring via spreadsheets and unspecified emails. (Dkt. No. 128, Attachs. 3 at 10-24; 4 at 19-30; 5 at 21-33; 6 at 26-36; 7 at 9-23.) However, after reviewing "hundreds of emails, if not more," (*id.*, Attach. 5 at 20), plaintiffs fail to identify any email that contained federal tax information or any federal tax information in any shared spreadsheets.

Given plaintiffs' failure to offer evidence in response, *see supra* note 4, defendants' argument that no federal tax information was disclosed is considered unopposed.

> In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a modest burden.

*Quinn v. United States*, 946 F. Supp. 2d 267, 276-77 (N.D.N.Y. 2013) (internal quotation marks and citations omitted). Here, defendants easily satisfy the lightened burden triggered by plaintiffs' failure to properly oppose their argument, as well as the standard summary judgment burden. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"); *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) ("When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment . . . nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts[.]") (internal quotation marks and citation omitted).

In sum, plaintiffs' failure to point to evidence in the record that could lead to the reasonable inference that defendants disclosed their federal tax information is fatal to their remaining clams.

*2. Proper Tax Administrative Purpose*

Even assuming that defendants disclosed plaintiffs' federal tax information to the Labor Relations Bureau or Human Resources Department, defendants argue that such internal disclosures were for a proper tax administrative purpose, as permitted by 26 U.S.C. § 6103(d). (Dkt. No. 128, Attach. 1 at 17-23.) Section 6103(d)(1) generally provides

14

that:

> Returns and return information . . . shall be open to inspection by, or disclosure to, any State agency, body, or commission . . . which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws[.]

Section 6103(d)(1) also requires that any disclosure by an Internal Revenue Service (IRS) official to a state taxing authority be made pursuant to a request in writing from the state taxing authority. Courts have held that an agreement between a state taxing authority and the IRS will satisfy this written request requirement if such agreement: (i) requests tax information; (ii) is signed by the head of the state agency; and (iii) designates those authorized to receive the information. *See Smith v. United States*, 964 F.2d 630, 633 (7th Cir. 1992).

In their erratic response, plaintiffs contend that "[t]he body of case law cited by the defendants[] states that tax [sic] officials have broad authority to review [federal] tax [information] pursuant to their investigative powers," and "defendants have offered no authority to support the purported defense that state tax employees may share federal tax information with other state employees absent a need to know [basis]." (Dkt. No. 145, Attach. 3 at 15.) Additionally, plaintiffs contend that they

15

"never disclosed any [sic] documents giving anybody the right to peruse through [their] federal tax records[.]" (*Id.* at 16.)

However, the record demonstrates that any internal disclosure associated with defendants' audit of Department employees was necessary, (Defs.' SMF ¶¶ 53, 61-62, 69-73), and done "in connection with [the Department's] legitimate need to protect the integrity of its tax enforcement operations by ensuring that its employees were in compliance with the tax laws." *Gardner v. United States*, 213 F.3d 735, 740 (D.C. Cir. 2000); *see Hobbs v. United States ex rel. Russell*, 209 F.3d 408, 410-11 (5th Cir. 2000)*; Rueckert v. I.R.S.*, 775 F.2d 208, 211-12 (7th Cir. 1985); *United States v. Mangan*, 575 F.2d 32, 40 (2d Cir. 1978). Additionally, defendants have provided a memorandum of understanding between the IRS and the Department that requests tax information, is signed by the head of the Department, and designates those authorized to receive the information. (Dkt. No. 128, Attach. 42.) Accordingly, there are multiple reasons to grant defendants' motion for summary judgment.[10]

## V. Conclusion

---

[10] As such, the court need not address defendants' alternative argument that any disclosures were made based on defendants' good faith interpretation of § 6103. *See* 26 U.S.C. § 7431(b)(1); (Dkt. No. 128, Attach. 1 at 23-25).

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for summary judgment (Dkt. No. 128) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' motion for sanctions (Dkt. No. 145) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 20, 2018
Albany, New York

*Gary L. Sharpe*
Gary D. Sharpe
U.S. District Judge